1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                   FOR THE EASTERN DISTRICT OF CALIFORNIA

11  ROY TANIGUCHI,

12          Plaintiff,                        No. CIV S-03-2306 KJM

13      vs.

14  THE PRUDENTIAL INSURANCE              ORDER
    COMPANY OF AMERICA,
15
            Defendant.
16  _____/

17          Defendant's motion for summary judgment came on regularly for hearing on

18  August 24, 2005.  Michael Babitzke appeared for plaintiff.  Dennis Rhodes appeared for

19  defendant.  Upon review of the documents in support and opposition, upon hearing the

20  arguments of counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

21  I.  Facts

22          Plaintiff, Roy Taniguchi, worked as a process operator for Corn Products, Inc.

23  which required plaintiff to monitor a product line.  Pl.'s Resp. to Statement of Undisputed

24

25

26

                                          1

Material Facts ("DF"[1]), no. 27.  Over the course of sixteen years, plaintiff took 1-2 hour naps during his work shifts.  Record Transcript ("RT")[2] 0151-0152.  After being advised by his employer that he would be terminated for falling asleep on the job one more time, plaintiff sought long-term disability leave.  Def't's Statement of Undisputed Material Facts ("SUF"), no. 17.  Defendant awarded disability benefits to plaintiff in August 2000 based on plaintiff's diagnosis of narcolepsy.  SUF, no. 24.  However, after learning that plaintiff's diagnosis had changed to sleep apnea and that plaintiff was being treated with a CPAP mask, defendant terminated plaintiff's disability benefits in August 2001.  SUF, nos. 28, 37.

Three times plaintiff appealed defendant's decision to terminate plaintiff's benefits.  On the appeal, plaintiff also indicated medical conditions other than sleep disorders that made him unable to perform his job.  SUF, nos. 29-31.  Defendant denied each appeal and plaintiff filed this suit under ERISA, 29 U.S.C. § 1132(a)(1)(B).

II.  Standard of Review

The parties dispute the applicable standard of review.  Defendant seeks application of the abuse of discretion standard under which the court will uphold the plan administrator's denial of benefits unless the determination was made in an arbitrary and capricious manner.  Alternatively, plaintiff seeks *de novo* review.

When a party challenges a denial of benefits under 29 U.S.C. § 1132(a)(1)(b), the standard of review is *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the standard is abuse of discretion.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see also Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317 (9th Cir. 1995).

---

[1]  "DF" is used here to reference disputed facts or plaintiff's explanations in response to undisputed facts.

[2]  Pages of the Record Transcript are attached to the Decl. of Laura Hannan, lodged on May 19, 2005.

1   The benefit plan must explicitly state or clearly imply that the administrator has discretionary

2   authority, in order for the court to apply the discretionary standard of review.  Walker v.

3   American Home Shield Long Term Disability Plan, 180 F.3d 1065, 1070 (9th Cir. 1999) ("When

4   an ERISA plan administrator cannot exercise discretionary power because the plan confers none,

5   the more deferential standard of review is inappropriate.  Because the UNUM plan at issue does

6   not state or imply that the administrator's factual findings or determinations of eligibility are

7   entitled to deference, we will not read such terms into the plan." (citation omitted)).

8          In the instant case, the court reviews *de novo* the decision to terminate benefits.  In

9   attempting to prove that the discretionary standard applies, defendant relies on the disclosure in

10  the ERISA Statement,[3] which purports to give the administrator discretionary authority to

11  determine eligibility for benefits.  However, for the reasons described below, the court finds that

12  the ERISA Statement is not part of the benefit plan document.  Therefore, in accordance with

13  Walker, the *de novo* standard applies.  Id.

14         Ambiguity in an ERISA insurance contract is construed against the drafter.

15  McClure v. Life Ins. Co., 84 F.3d 1129, 1134 (9th Cir. 1996).  In this case, defendant created

16  /////

17

18

19

20      [3] The ERISA Statement is a five page document beginning on page 26 of the Plan
    Booklet.  The first paragraph of the first page of the ERISA Statement states:

21

22      This Group Contract underwritten by The Prudential Insurance
        Company of America provides insured benefits under your

23      Employer's ERISA plan(s).  The Prudential Insurance Company of
        America as Claims Administrator has the sole discretion to

24      interpret the terms of the Group Contract, to make factual findings,
        and to determine eligibility for benefits.  The decision of the

25      Claims Administrator shall not be overturned unless arbitrary and
        capricious.

26  RT0041.

3

1  ambiguity in two ways.  First, by including the ERISA statement in the Booklet,[4] which

2  comprises part of the Group Insurance Certificate,[5] while stating that the ERISA Statement is not

3  part of the Group Insurance Certificate,[6] defendant created an ambiguity as to whether the ERISA

4  Statement is intended to be a binding document.  Second, it is unclear whether the Group

5  Insurance Certificate alone is the benefit plan document.  By pointedly excluding the ERISA

6  Statement from the Group Insurance Certificate, defendant appears to treat the Group Insurance

7  Certificate as a special group of documents.  A reasonable person could conclude that such a

8  special group of documents likely constitutes the benefit plan.  Winterrowd v. Am. Gen. Annuity

9  Ins. Co., 321 F.3d 933, 938-39 (9th Cir. 2003) ("An ERISA plan . . . must enable reasonable

10  persons to 'ascertain the intended benefits, beneficiaries, source of financing, and procedures for

11  receiving benefits.'" (citation omitted)).  At the very least, an ambiguity is created, which the

12  court construes against defendant in determining the Group Insurance Certificate to be the benefit

13  plan document, from which the ERISA Statement is excluded.  Because the only indication of the

14  administrator's discretionary authority is not included in the benefit plan document, the *de novo*

15  standard of review applies.

16      Applying the *de novo* standard in a motion for summary judgment regarding

17

18      [4] The Foreword of the Booklet states:

19      We are pleased to present you with this Booklet.  It describes the
         Program of benefits we have arranged for you and what you have
20      to do to be covered for these benefits. ... IMPORTANT NOTICE ...
         This Booklet and the Certificate of Coverage made a part of this
21      Booklet together form your Group Insurance Certificate.

22  RT0016.

23      [5] The Group Insurance Certificate consists of the Booklet and the Certificate of Coverage.
    The Booklet does not specify what purpose the Group Insurance Certificate serves.  See
24  RT 0016.

25      [6] The page of the Booklet immediately preceding the ERISA Statement contains a total of
    three lines of text, in large bold font, stating, "This ERISA Statement is not part of the Group
26  Insurance Certificate."  RT 0040.

4

1   ERISA, the court views the evidence in the light most favorable to the non-moving party, and

2   determines whether there are any genuine issues of material fact based on the record before the

3   plan administrator.[7]  Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d

4   938, 942 (9th Cir. 1995) (under *de novo* standard, court does not consider whether there was

5   substantial or ample evidence to support the plan administrator's decision).

6   III.  Analysis

7              In the present case, plaintiff fails to raise a triable issue of material fact.

8   Defendant considered plaintiff's claims that he suffered from diabetes 2, high blood pressure,

9   high cholesterol, arthritis, neuropathy in legs and feet, stomach disorder, depression, poor eye

10  sight, a history of pain in his back and neck, hepatitis A, difficulty breathing, and sleep apnea.

11  The record contains the independent review of plaintiff's medical records regarding these

12  conditions, which was conducted by Douglas W. Martin, M.D.; Dr. Martin provided an in-depth

13  analysis consisting of eleven pages.  RT0127-0137.  Dr. Martin found "there is insufficient

14  medical documentation to support limitations from performing the job that has been described by

15  the company [plaintiff] works for."  RT0127.  Plaintiff submitted no further medical

16  documentation after Dr. Martin's review.  SUF, no. 67; RT0103-0104.  Moreover, plaintiff

17  previously had worked with all of the above-mentioned health conditions and there had not been

18  a significant worsening of his conditions since the onset of disability.  SUF, no. 39.

19             In the administrative appeals and in the briefing before this court, plaintiff has

20  pressed that the basis of his disability is a sleep disorder.  Plaintiff asserts that he still suffers

21  from "episodes of sleepiness" that prevent him from substantially performing his job, which is

22  largely sedentary in nature and conducive to sleeping.  DF, no. 37.  Plaintiff was warned prior to

23

24          [7]  In certain circumstances the court may exercise its discretion to consider additional
    evidence.  "The district court should exercise its discretion, however, only when circumstances
25  clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of
    the benefit decision."  Mongeluzo, 46 F.3d at 944 (quoting Quesinberry v. Life Ins. Co., 987 F.2d
26  1017, 1025 (4th Cir.1993)).  In this case, plaintiff conceded at hearing that there is no other
    material evidence.

1   his disability leave that he would be terminated if he fell asleep on the job one more time.  SUF,

2   no. 17.  However, plaintiff admits that the CPAP mask has been effective and that he does not

3   suffer from "sleep attacks."  SUF, no. 37.  Thus, there is no evidence to create an issue of

4   material fact regarding whether plaintiff has narcolepsy or unavoidably falls asleep after use of

5   the CPAP mask and/or medication.

6           No treating physician has opined that plaintiff cannot perform his job due to a

7   sleep disorder.  The most recently documented medical examination of plaintiff was conducted

8   by Karen Kim, M.D. on October 29, 2001.  Dr. Kim wrote a "functional assessment" of plaintiff,

9   which did not indicate plaintiff's sleep apnea would limit his ability to work.[8]  RT0156.  Plaintiff

10  also submitted questionnaires completed by three of his treating physicians: Dr. Ali, Dr. Kobrin,

11  and Dr. Kake.  The court finds these doctors' opinions, as expressed in the questionnaires, do not

12  raise a triable issue of material fact.  On the questionnaires, each of these three doctors checked a

13  "no" box for the question, "When just considering the cardiac condition, sleep disorder, and

14  severe neuropathy in his extremities, do you believe that Mr. Taniguchi is capable of being

15  competitive in an 8 hour per day work environment on a regular 5 day per week basis?"

16  RT0157-0159.  Because this question lists three possible causes of disability, however, these

17  doctors' opinions are inconclusive as to plaintiff's sleep disorder being disabling.[9]  Moreover,

18  none of the doctors reviewed a specific description of plaintiff's job duties; such a review would

19  have been necessary to determine whether plaintiff could perform his job.  RT0157-0159.  More

20  specifically, each doctor fails to indicate that the plaintiff is being treated by that doctor for a

21  sleep disorder.  Dr. Ali states that he defers to the neurologist.  RT0157.  Dr. Kobrin does not

22

23          [8] Plaintiff told Dr. Kim he has been taking "naps" while on the job for about 16 years,
    that he took naps when he felt sleepy, and that he "never fell asleep at the wheel."  RT0151-0152.

24          [9] As to the alleged medical conditions other than sleep apnea, as noted above, Dr. Martin
25  reviewed plaintiff's specific job description and found these conditions would not limit plaintiff
    in performing his job.  RT0127.  Moreover, plaintiff had successfully performed the very job for
    which he was claiming he was disabled, with the same medical conditions that remained
26  unchanged.  SUF, no. 39.

1   make reference to plaintiff's sleep disorder at all.  RT0158.  Dr. Kake states that plaintiff is being

2   treated for narcolepsy by another medical doctor.  RT0159.  For these reasons, these doctors'

3   evaluations do not raise a triable issue as to whether plaintiff has a disabling sleep condition.

4          Plaintiff was found eligible for Social Security Disability benefits effective

5   December 29, 1999.  However, there is no evidence in the record regarding the basis for the

6   award of Social Security Disability.  The standards for determining disability under Social

7   Security are different from those under ERISA.  Black & Decker Disability Plan v. Nord, 538

8   U.S. 822, 831 (2003).  An award of Social Security benefits alone does not compel a finding that

9   plaintiff is entitled to benefits under the specific terms of an ERISA plan.

10  IV.  Attorney's Fees

11         Defendant moves for an award of attorney's fees under 29 U.S.C. § 1132(g)(1).

12  There are five factors for determining whether to award attorney's fees: 1) whether there is a

13  requisite degree of opposing party's culpability or bad faith; 2) whether the opposing party has

14  the ability to satisfy an award of fees; 3) whether an award of fees against the opposing party

15  would deter others from acting under similar circumstances; 4) whether the party requesting fees

16  sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant

17  legal question regarding ERISA; and 5) whether the relative merits of the parties' positions

18  warrant an award of fees.  Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1980.)

19         Upon review of these factors, the court finds an award of attorney's fees is not

20  warranted in this case.  There is no indication plaintiff has brought the action in bad faith;

21  defendant previously had placed plaintiff on disability leave for narcolepsy and it appears that

22  plaintiff still suffers from episodes of sleepiness.  Plaintiff has succeeded in persuading the court

23  that the ERISA statement is not part of the plan document, which has resulted in the *de novo*

24  review plaintiff sought.  There is no reason to deter litigation of this nature through an award of

25  fees.

26  /////

For the foregoing reasons, IT IS HEREBY ORDERED that:

1) Defendant's motion for summary judgment is granted;

2) Defendant's motion for attorney's fees is denied; and

3) This action is dismissed.

DATED: October 27, 2005.

_____
UNITED STATES MAGISTRATE JUDGE